**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| ELAINE P. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-CV-277 |
| | ) | |
| AMERICO FINANCIAL LIFE AND ANNUITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Cross-Motions for Summary Judgment)**

This matter is before the Court on Cross-Motions for Summary Judgment. Defendant Americo Financial Life and Annuity Insurance Company ("Americo") filed its motion on October 6, 2009. Plaintiff Elaine P. Rogers ("Ms. Rogers") filed her motion on October 12, 2009. The Court heard argument on both motions on December 10, 2009. For the reasons stated herein, Plaintiff's Motion is denied and Defendant's motion is granted.

**I.**

This breach of contract case concerns a life insurance policy purchased by Plaintiff's late husband, Timothy M. Rogers, from Americo on July 5, 2007. The policy provided an initial death benefit of $200,000 and named Plaintiff as the beneficiary. The $187.43 monthly payments for the policy were drawn by automatic debit from the Rogers' bank account. The policy stated that:

This certificate will terminate on the earliest of:

1. The date we receive your request in writing to surrender the certificate;
2. The date the insured dies;
3. The expiry date;
4. The end of the grace period, if a past due premium remains unpaid; or
5. The conversion date.

Ex. A to Am. Compl.

Mr. and Ms. Rogers began having financial difficulties in 2008 and 2009 and realized that they would not be able to afford the monthly payments for his Americo policy. Ms. Rogers alleges that she spoke with Americo representatives at least once prior to January 28, 2009 and was told that the only way to remove her account from automatic debit was to cancel the policy. Defendant Americo, which purportedly documents all communications with policyholders, denies that these pre-January 28, 2009 conversations occurred.

On January 28, 2009, Mr. and Ms. Rogers took a number of significant actions. First, Ms. Rogers called Americo customer service to cancel her policy numbered G0063679, and Americo representative Nicki Melton told her that a written request was required to cancel but that the policy would be taken off of automatic draft. Second, Mr. and Ms. Rogers spoke with Justin Moravec of Americo. In this conversation, Ms. Rogers expressed a desire to cancel the policy G0063680, insuring Mr. Rogers. Moravec stated that a written request from Mr. Rogers was necessary to terminate the policy. Moravec stated that Mr. and Ms. Rogers would receive an automatically-generated bill for the

annual premium of $2,142.00 but to disregard it.[1] Mr. and Ms. Rogers then wrote, signed, and delivered a letter dated January 28, 2009 to Americo stating: "I am writing to confirm that we would like to cancel policy# G0063679 [*sic*] and policy #G0063680." Ex. B to Am. Compl. On February 2, 2009, Americo's Policy Accounting office sent a letter to Mr. Rogers stating that insurance policy G0063680 had been removed from automatic bank draft and placed on annual direct billing. Americo also sent to Mr. Rogers a bill for $2,142.00, the amount of the annual premium, that was due on February 1, 2009. Around the same time, Mr. Rogers obtained work, and Plaintiff alleges that Mr. Rogers reassessed his position and decided to continue the policy and pay the annual premium.

Sadly, Mr. Rogers suffered a cardiopulmonary arrest on February 9, 2009 and passed away the same day. Also on February 9, Americo sent to Mr. Rogers a letter stating: "We have received a request to cancel the above listed policy. Although we regret your decision to terminate valuable coverage, your policy has been cancelled effective February 01, 2009." Ex. F to Am. Compl. Prior to receiving this letter, on February 10, 2009, Ms. Rogers phoned Americo to make a claim on her husband's policy. Ms. Rogers alleges that the Americo customer service representative told her that the policy was in a grace period, a fact that Defendant Americo disputes. Ms. Rogers

---

[1]Unlike the alleged pre-January 28, 2009 conversations, pursuant to company policy, both conversations of January 28, 2009 were recorded.

believed that her late husband's policy was then in a grace period during which she could reinstate the policy, and Ms. Rogers's daughter-in-law sent Americo a payment of $2,142.00 on March 3, 2009 and a letter stating: "I am enclosing the annual premium due on policy number G0063680. Please reinstate the policy effective immediately upon payment."[2] Ex. G to Am. Compl. Ms. Rogers then requested payment of the death benefits under her late husband's policy. On April 6, 2009, Betty Watkins, a Professional Claims Examiner for Americo sent a letter to Ms. Rogers stating that the policy had been terminated prior to Mr. Rogers's death and that consequently no death benefit was payable under the cancelled insurance policy.

Ms. Rogers brought this suit seeking damages in the amount of $200,000 plus interest and attorney's fees and costs.

## II.

The Court may grant either party's motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine

[2]The reinstatement provision of the policy required insured to "[p]rovide satisfactory evidence of insurability," which was not possible in this case.

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

## III.

### A. Facts in Dispute

A number of facts remain in dispute. First among these is whether Mr. and Ms. Rogers subjectively intended to cancel their policy. Plaintiff states in her pleadings that it was their intent to cancel only the automatic bank draft. Plaintiff's counsel stated at oral argument, however, that "They [Mr. and Ms. Rogers] attemped to cancel." Defendant on the other hand asserts that Plaintiff unequivocally intended to cancel the policy.

Second, Plaintiff alleges that in at least one phone call prior to January 28, 2009, an Americo representative told her that the only way to stop the automatic bank draft was to cancel the policy. Americo disputes that these phone calls took place and that Mr. and Mrs. Rogers were ever provided such instruction by their agent.

Third, Plaintiff alleges that the check that her daughter-in-law sent to Americo for $2,142.00 was sent by overnight delivery on March 3, 2009, and arrived within the 31-

day "grace period." Americo disputes this fact and argues that the check arrived on March 5, 2009, outside the 31-day "grace period."

Fourth, Plaintiff alleges that in a February 10, 2009 phone call with Americo to inform them of her husband's death, the customer service representative informed her that the life insurance policy was within the grace period. Defendant denies that their representative told Ms. Rogers that the policy was within the grace period.

Fifth, Plaintiff alleges that Defendant's February 9, 2009 letter memorializing cancellation of the policy was backdated. Defendant disputes this assertion. Plaintiff advances no evidence to support this claim.

**B. Materiality of Disputed Facts**

To defeat a motion for summary judgment, the facts in dispute must be *material.* Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Accordingly, the Court must determine whether either movant is entitled to judgment as a matter of law based on the undisputed facts and whether resolution by a jury of any of the disputed facts "might affect the outcome of the suit." *Id.*

As noted above, the life insurance policy provided five means to terminate the policy:

> This certificate will terminate on the earliest of:
> 1. The date we receive your request in writing to surrender the certificate;
> 2. The date the insured dies;
> 3. The expiry date;

4. The end of the grace period, if a past due premium remains unpaid; or
5. The conversion date.

Ex. A to Am. Compl. There is no question that means 2, 3, and 5 listed above are not at issue. Defendant argues that the insurance policy terminated on either February 1, 2009 or February 2, 2009 pursuant to the first termination method listed above–"The date we receive your request in writing to surrender the certificate." Plaintiff counters that her letters "cancelling" the policy did not comply with the provisions of the first termination method and that her husband passed away during the grace period provided for in the fourth termination method and while the policy was still in effect.

It is undisputed that on January 28, 2009, Mr. and Ms. Rogers sent a letter to Defendant Americo stating: "I am writing to confirm that we would like to cancel policy# G0063679 [*sic*] and policy #G0063680."

Plaintiff offers two theories as to why this letter was ineffective in terminating the policy. First, Plaintiff asks the Court to view this letter in light of previous conversations where Americo officials allegedly told Ms. Rogers that the only way to terminate direct billing was to terminate the policy. According to this argument, Plaintiff's letter was a confirmation of the couple's intent to terminate direct billing and should not be viewed as a cancellation of the insurance policy.

Alternatively, Plaintiff argues that the sending of this letter did not comply with the terms of the contract regarding termination and did not effectively cancel the policy. Plaintiff argues that the phrase "request in writing to surrender the certificate" is vague,

and the Court must look to other provisions of the contract to give this phrase meaning. The Court finds neither of these arguments convincing.

With regard to Plaintiff's first argument that the letter had the effect of confirming the couple's intent to cancel direct billing, the Court must begin by determining the objective intent of Plaintiff's letter. *State Farm Mut. Auto. Ins. Co. v. Pederson*, 41 S.E.2d 64, 67 (Va. 1947) ("Whether a particular communication should or should not be construed as a notice or request for cancelation [*sic*] will depend on the intent of the insured as ascertained from his communication or all the circumstances."). Plaintiff asks the Court to look at other communications and circumstances outside of the written document to determine its intent. While application of the parol evidence rule to a letter such as this is unclear, the principle remains the same–the Court should "construe a document according to its plain terms if it is clear and unambiguous on its face." *Ott v. L & J Holdings, LLC*, 654 S.E.2d 902, 905 (Va. 2008). When a document is clear on its face, "the court will not look for meaning beyond the instrument itself." *Id.* The letter's plain terms are clear and unambiguous–the letter was designed to cancel Plaintiff's insurance policy. Plaintiff's letter did not reference termination of direct billing, did not reference any conversations with Americo representatives, and did not address the letter to anyone in particular. Any of these could potentially have provided basis for a determination of an intent other than cancellation. Applying the principle of the parol evidence rule, the Court will not take into consideration any pre-January 28, 2009 phone

calls. As such, they would have no impact on the outcome of this suit and are not material for purposes of the summary judgment motion.

The Court finds Plaintiff's second argument that Plaintiff's termination letter failed to comply with the terms of the contract equally unpersuasive. Plaintiff argues that a "request in writing to surrender the certificate" as the first method of termination is vague, and the Court must look elsewhere in the contract to give this phrase meaning. Plaintiff argues that a request to "surrender the certificate" must comply with the procedure on the first page of the policy under the heading "NOTICE OF 20 DAY RIGHT TO EXAMINE THE CERTIFICATE: RIGHT TO CANCEL." Under this provision, a certificate may be cancelled only by returning the actual certificate to Americo. The Court finds that this paragraph pertains only to the statutorily-required right to examine the policy. Virginia Code § 38.2-3301 requires that life insurance policies give policyowners at least ten days from delivery to review the terms of a policy, during which the policyowner can void the policy and recover any premium paid. This mandated right to examine provision is separate and apart from the right to terminate by written request *after* the policy is in effect. The Court finds that the right to terminate by written request is clear on its face and that these two provisions should not be read in concert. Following the statutory right to examine period, a written request to surrender the certificate or an unambiguous equivalent will terminate the policy and physical surrender of the certificate is not required. *See Pederson*, 41 S.E.2d at 67. Here,

Plaintiff's letter served as an unambiguous equivalent of a request to surrender the certificate.

The Court finds that Plaintiff effectively terminated the policy, and this termination became effective upon Americo's receipt of the letter of cancellation, pursuant to the policy terms. A terminated policy cannot be simultaneously within the policy's grace period, and there is no provision in the contract for resurrection of a policy affirmatively terminated by the policyholder. The post-termination disputed facts regarding when Plaintiff's daughter-in-law's check arrived at Americo's office, whether Americo's February 9, 2009 letter was backdated, and the contents of the February 10, 2009 phone call would have no bearing on the dispositive issues and are thus immaterial. Similarly, Plaintiff's subjective intent in sending the letter of cancellation is irrelevant. The clear and unequivocal language of the letter best bespeaks her intent.

**C. Virginia Code § 38.2-3325**

Plaintiff's final argument is that the insurance policy failed to comply with the terms of Va. Code § 38.2-3325; plaintiff suggests that the Court must find in Plaintiff's favor as a result. The statute at issue provides:

> Each group life insurance policy shall contain a provision that the policyowner is entitled to a grace period of not less than thirty-one days for the payment of any premium due except the first. The provision shall also state that during the grace period the death benefit coverage shall continue in force, unless the policyowner has given the insurer written notice of discontinuance in accordance with the terms of the policy and in advance of the date of discontinuance.

Va. Code Ann. § 38.2-3325 (2009). The policy itself has a provision that establishes the

grace period: "We will allow a grace period of 31 days after the due date for payment of each premium after the first." The policy also has a provision stating that the policy remains in force during the grace period: "This certificate will continue in force during the grace period." The policy does not, however, have the required language that the grace period will not apply if the policyholder gives the insurer written notice of discontinuance in advance of the date of continuance. Plaintiff argues that her efforts to terminate were not effective because the policy's notice provisions did not meet the statutory requirements, relying on *Dodson v. J.C. Penney Co., Inc.*, 336 F.3d. 696 (8th Cir. 2003). Virginia has not adopted this hypertechnical position. The prescribed language required by § 38.2-3325 is instead considered a part of the contract by operation of law. *See Ampy v. Metro. Cas. Ins. Co. of N.Y.*, 105 S.E.2d 839, 844 (Va. 1958); *Maxey v. Am. Cas. Co. of Reading, PA.*, 23 S.E.2d 221, 223 (Va. 1942).

The Court will therefore integrate the language of § 38.2-3325 into the contract in weighing the undisputed facts. The provision in question states: "during the grace period the death benefit coverage shall continue in force, unless the policyowner has given the insurer written notice of discontinuance in accordance with the terms of the policy and in advance of the date of discontinuance." Va. Code Ann. § 38.2-3325 (2009).

Plaintiff maintains that since notice of cancellation was not made "in advance of the date of discontinuance," Plaintiff's letters seeking to terminate the policy fell short of what the statute required. Defendant contends that Plaintiff's policy never reverted to

grace period status, but even if it did, Virginia law gives effect to a policyholder's request for immediate termination irrespective of the required advance notice of termination. The Supreme Court of Appeals of Virginia, the predecessor to the Supreme Court of Virginia, addressed this question in *State Farm Mutual Automobile Insurance Co. v. Pederson*, 41 S.E.2d 64 (Va. 1947). In *Pederson*, the insured had an automobile insurance policy that stated it could be cancelled "by mailing to the company written notice stating when thereafter such cancelation [*sic*] shall be effective." *Id.* at 64. The insured asked for cancellation "as of today." *Id.* at 66. The court examined Pederson's argument that cancellation "as of today" did not immediately cancel the policy in light of the policy's requirement that the insured state *when thereafter* such cancellation is effective. The court rejected what it characterized as an "extremely technical" argument and concluded that such a demand for immediate cancellation was effective when received by the insurance carrier. *Id.* at 68. The Fourth Circuit has since applied the logic of *Pederson* in *Johnson v. Nationwide Mutual Insurance Co.*, 276 F.2d 574, 580-81 (1960).

Plaintiff asks the Court to follow the Eighth Circuit's reasoning in *Dodson.* The facts in *Dodson* are readily distinguishable from the case at hand. *Dodson* involved the efficacy of an oral request for cancellation, and the Eighth Circuit focused its decision on the lack of written notice rather than the lack of advance notice. *Dodson*, 336 F.3d. at 701.

The provisions of Va. Code § 38.2-3325 do not alter the Court's conclusion that

Plaintiff's January 28, 2009 letter terminated the insurance policy in question–as Plaintiff specifically requested.

## IV.

Although the outcome of this case is unfortunate from a human perspective, the determinative facts and controlling law are clear. The Court finds that the material facts in this case are not in dispute. Even when the evidence is viewed in the light most favorable to the Plaintiff, the policy at issue was terminated prior to her husband's death. There is simply no other logical interpretation of the clear language chosen by Plaintiff in her letter of January 28, 2009. Accordingly, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Dec 17, 2009
Richmond, VA